UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN GRANT, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 4:14CV01395 ERW |
| DONALD BROWN, *et al.*, | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

This matter comes before the court on Plaintiffs' Motion for Judgment on the Pleadings [ECF No. 28], Defendants' Motion for Summary Judgment [ECF No. 39], Plaintiffs' Motion for Summary Judgment [ECF No. 41] and Defendants' Motion to Reopen the Record Due to Newly Acquired Evidence [ECF No. 62].

## I. FACTUAL BACKGROUND

This lawsuit originated when Plaintiffs Brian Grant, David Gillick, John J. Smith, Michael Heitkamp, Jr., and Richard Frisch, as Employer Trustees of the Bricklayers Local 1 Pension Fund, filed a petition for appointment of an arbitrator on July 14, 2014 [ECF No. 1]. Defendants are Donald Brown, Robert Guinn, John Finder, John Hopkin, and Brian Jennewein as Union Trustees of the Bricklayers Local 1 Pension Fund.[1] The undisputed facts are as follows.

---

[1] The Board of Trustees for the Pension Fund is comprised of five Employer Trustees and five Union Trustees. When the Court refers to the Trustees without designating either Employer or Union, it refers to the Trustees as a whole.

1

The Bricklayers Local 1 Pension Trust Fund ("Fund") is governed by the terms of the Restatement of Bricklayers Local No. 1 of Missouri Pension Trust ("Trust") [ECF No. 43, ¶ 1]. The Fund is a multiemployer benefit trust established pursuant to the Taft-Hartley Act [ECF No. 39-16, ¶ 1]. The Trust provides for equal representation between employers of the Mason Contractors Association of St. Louis ("Association") and the Bricklayers Union Local No. 1 ("Union") [ECF No. 43, ¶ 2]. Pursuant to the Trust, the trustees of the Fund created the Bricklayers Union Local No. of Missouri Pension Plan ("Plan") which governs contributions and allocations of the Fund [ECF No. 28-2].

At a June 24, 2014, meeting of the trustees of the Fund a motion was made by Plaintiffs to amend the Plan as set forth in the sample amendment to the Summary Plan Description ("Amendment") which was distributed to the trustees [ECF No. 43, ¶ 6; No. 39-16, ¶ 4]. The five Employer trustees voted in favor of the motion while the five Union trustees voted against the motion [ECF No. 43, ¶ 7; No. 39-16, ¶5]. On June 25, 2014, Co-Chairman Brian Grant provided Chairman Don Brown a list of three proposed arbitrators [ECF No. 43, ¶ 8]. Defendants have refused to arbitrate the matter [ECF No. 39-16, ¶ 6].

The proposed Amendment to the Plan states the following:

"Effective January 1, 2015 the Plan will be operated under a hybrid (Defined Benefit and Defined Contribution) method. Contributions to the Plan on behalf of all participants will be allocated as follows: 30% to be applied to the Defined Benefit, until such time that the Defined Benefit portion is funded to 115% of liability using the Pension Benefit Guaranty Corporation ("PBGC") Rates or acceptable risk-free rate determined by the Trustees; 70% to be applied to the Participant's Defined Contribution Account.

All participants in the Plan as of the hybrid method's effective date will be 100% vested under the Plan for both the Defined Benefit and Defined Contribution portions of the Plan.

The Accrued Benefit of a participant is both the Participant's monthly Defined Benefit pension accrued prior to January 1, 2015, and the Participant's Defined Contribution Account accrued after January 1, 2015.

Participants first participating in the Plan after the effective dates of this amendment, will be 100% vested in Accrued Benefits after three (3) Years of Vesting Service or 3,600 Hours of Service, whichever comes first.

As of January 1, 2015 no additional Years of Service will be credited for purposes of determining the Defined Benefit for a Participant.

The Employer contribution that is allocated to the Defined Contribution portion of the Plan will be allocated to the Defined Contribution Account of the Participant with respect to whom the Employer contribution was made. The Participant's Defined Contribution Account will be pooled and invested along with the Participant Defined Contribution Accounts of all other Participants. Each Participant's Defined Contribution Account will be separately tracked and valued monthly.

Both the Defined Contribution and Defined Benefit portions of the Plan shall be professionally invested and managed.

A Participant's Defined Contribution Account will be distributable at the same time as the Participant's Accrued Benefit under the Defined Benefit portion of the Plan.

. . . [ECF No. 28-4].

## II.   STANDARD[2]

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a

---

[2] Plaintiffs filed both a Motion for Judgment on the Pleadings and a Motion for Summary Judgment. The standard for a motion for judgment on the pleadings is governed by FRCP 12(c). Similar to a motion for summary judgment, a judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th 2002). The Court applies the summary judgment standard as the result in this case would be the same under FRCP 12(c).

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual

issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## III. DISCUSSION

Plaintiffs assert in their Motion for Judgment on the Pleadings and in their Motion for Summary Judgment, this deadlock between the trustees is subject to the Trust's arbitration clause and a neutral arbitrator should be appointed by the Court. Defendants contend this deadlock is not subject to the arbitration clause in the Trust because it constitutes a termination of the plan which is an exception to the arbitration clause. Defendants also assert this deadlock is not subject to the arbitration clause provided in the Labor Management Relations Act of 1947 ("LMRA")[3] because it is not a matter of plan administration.

### A. *Statutory Framework*

The LMRA restricts the payment of money by an employer to employees, representatives, or labor organizations, with certain exceptions. 29 U.S.C. § 186(a). One exception is money paid to a trust fund for the benefit of the employees and their families. 29 U.S.C. § 186(c)(5). A trust established for this purpose must meet the following requirements: (1) the payments are for the purpose of paying for medical care, pensions on retirement or death, compensation for injuries or illness resulting from the job, insurance for any of these purposes, unemployment benefits, life insurance, disability and sickness insurance or accident insurance;

---

[3] The LMRA is commonly referred to as the Taft-Hartley Act.

(2) the details of the payments are specified in a written agreement with the employer; (3) employer and employees are equally represented in the administration of the fund; (4) the agreement must provide for the two groups to agree on an impartial umpire to decide a deadlock between the employer and employee groups on the administration of the fund and if they cannot agree on an impartial umpire, on petition of either group, the district court of the United States shall appoint one; (4) the agreement shall provide for an annual audit of the trust fund with the statements of the results available for inspection by an interested person; and (5) payments made for the purpose of providing pensions or annuities will be made to a separate trust not to be used for any other purpose. *Id*.

As the parties agree, the Trust meets these requirements and is governed by the Employee Retirement Income Security Program ("ERISA") (29 U.S.C. § 1001 et seq.).

### B. *The Trust, the Collective Bargaining Agreement, and the Pension Plan*

The Trust allows for creation of the Pension Plan. Article II, Section 1 of the Trust states "The Plan shall set forth the amount and terms of payment of pensions and annuities to be provided by the Pension Fund and shall contain such additional provisions as the Trustees consider necessary or desirable." Section 2 states "Except to the extent that this agreement or a collective bargaining agreement provides to the contrary, the Trustees shall have full authority to determine the provisions of the plan." Article III, Section 2 states the Pension Fund shall be administered by ten trustees, five employer trustees and five union trustees.

The Trust Agreement includes an arbitration provision. Article III, Section 16 states:

"If there is a deadlock between the Employer Trustees and the Union Trustees on any matter, the Trustees shall agree on an impartial umpire whose decision on the matter in dispute shall be final and binding. If the Trustees are unable to agree on an impartial umpire within ten days, an impartial umpire to decide such dispute shall, upon petition of either the Employer Trustees or the Union

Trustees, or both, be appointed by a Judge of the U.S. District Court for the Eastern District of Missouri at St. Louis, Missouri."

C. *Arbitration*

Arbitration is favored in the United States. When an agreement contains an arbitration clause, there is a presumption of arbitrability. *AT&T Tech. Inc. v. Commc'n Workers of America*, 475 U.S. 643, 650 (1986). This is particularly true in labor disputes. *Iowa Beef Processors, Inc. v. Amalgamated Meet Cutters and Butcher Workmen of North Am., AFL-CIO*, 627 F.2d 853, 856 (8th Cir. 1980) ("... federal judicial policy overwhelmingly favors arbitration of labor disputes.") "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech, Inc.*, 475 U.S. at 650. The arbitration clause included in the Trust is broad as it refers to a deadlock on any matter. However, there are some limitations on this provision.

The Trust provides in Article III, Section 13: "Except as otherwise provided in Articles VI, VII, and VIII, any action taken by the Trustees pursuant to this agreement shall be by a majority vote of the Trustees . . ." Article VII governs termination of the pension fund. It provides the pension fund may be terminated at any time by a vote of five of the trustees, a concurring vote of a majority of all members of the Union present at a meeting called for this purpose, and by a concurring vote of the majority of all members of the Association who are present at a meeting called for this purpose. The trustees cannot deadlock on a termination because a termination does not require a majority of the votes of the trustees. Thus, the arbitration provision does not apply to terminations of the pension fund.

Defendants assert the proposed plan amendment constitutes a termination and must go to a vote of the Union and the Association. Plaintiffs argue the proposed amendment is not a

7

termination and even if it was, the termination clause in the Trust refers to termination of the pension fund, not the pension plan. Two issues must be decided – if the amendment constitutes a termination and if the termination clause of the Trust applies to termination of the plan.

      a.      Termination of the Plan

Section 8 of the Pension Plan provides three ways termination will occur. First, termination will occur if the plan is amended so members will not accrue any benefit for service performed. Second, termination will occur if the plan is converted to one which provides only benefits based on amounts contributed to an individual account for each member. Third, the plan will be terminated if there is a complete withdrawal of every employer from the plan or all employers' obligations cease. This closely mirrors termination of a plan set out in ERISA. *See* 29 U.S.C. § 1314a.

The proposed amendment requires thirty percent of contributions be applied to the defined benefit method and seventy percent of the contributions be applied to the participant's defined contribution account creating a hybrid plan.[4] However, no additional years of service will be credited to determine the defined benefit for a participant. Thus, new participants to the plan will only have a defined contribution account because they will not be accruing credits for years of service to receive a defined benefit. Eventually, all participants in the plan will only have defined contribution accounts and the defined benefit will no longer be available. This

---

[4] A multiemployer pension plan is a plan in which more than one employer is required to contribute pursuant to one or more CBAs. 29 U.S.C. 1002(37)(A). The pension plan at issue is a multiemployer plan. A defined benefit plan is a pension plan other than an individual account plan. 29 U.S.C. § 1002(35). A defined contribution plan is a pension plan which provides for an individual account for each participant and the benefits are based solely on the amount contributed to the account. 29 U.S.C. § 1002(34). The current pension plan at issue is entirely a defined benefit plan where each participant receives a credit for each year of service. Upon retirement, the participant's total number of credits will be multiplied by a dollar amount to determine the monthly retirement benefit the participant will receive.

constitutes a plan termination because the plan will eventually be converted to providing a benefit solely based upon amounts contributed to an individual account established for each participant which is the definition of a termination in both the pension plan and ERISA.

      b.      Termination Provision of the Trust

The termination provision of the Trust refers to termination of the pension fund. The issue is whether a termination of the pension plan is considered a termination of the pension fund. The Trust Agreement does not define pension fund. Neither does ERISA. ERISA defines "pension plan" as "any plan, fund, or program" which provides retirement income to employees. 29 U.S.C. § 1002(2)(A).[5] This suggests "pension fund" and "pension plan" may be used interchangeably. If "pension fund" and "pension plan" could not be used in this manner, then ERISA would include separate termination provisions for a pension fund and a pension plan. Instead, there is one termination provision. *See* 29 U.S.C. § 1341a. This is true for the Trust as well. The Trust provides a procedure for the steps to be taken if a termination occurs but fails to define what causes a termination. It is inexplicable the Trust would provide a procedure for termination of the pension fund without providing for what causes a termination unless the parties intended for termination of the pension plan as used in ERISA to apply. Additionally, in practice, a termination of the pension plan would terminate the fund because without a plan there is no way to disburse benefits. Thus, the termination provision of the Trust must apply to termination of the pension plan.

---

[5] Trust documents must generally be construed in light of ERISA's policies. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985).

The termination provision of the Trust does not allow for a deadlock between the trustees as only five trustee votes are needed for a vote to be put before the Union and Association. Therefore, the arbitration provision does not apply and this issue is not arbitrable.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Judgment on the Pleadings [ECF No. 28] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment [ECF No. 41] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Reopen the Record Due to Newly Acquired Evidence [ECF No. 62] is **DENIED** as moot.

So Ordered this 22nd Day of June, 2015.

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**